**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| OWNERS INSURANCE COMPANY,   )<br>                                                            )<br>   Plaintiff/Consolidated Defendant/  )<br>   Counterclaim Defendant,               )<br>                                                            )<br>v.                                                         )<br>                                                            )<br>BETTY LU HUGHES,                          )<br>                                                            )<br>   Defendant/Consolidated Plaintiff/   )<br>   Counterclaim Plaintiff.                     ) | Consolidated Case<br>No. 4:11-CV-782 CAS |

**MEMORANDUM AND ORDER**

This matter is before the Court on plaintiff/consolidated defendant/counterclaim defendant Owners Insurance Company's ("Owners") motion for summary judgment and defendant/consolidated plaintiff/counterclaim plaintiff Betty Lu Hughes' ("Hughes") cross-motion for summary judgment. For the following reasons, the Court will grant Owners' motion for summary judgment and deny Hughes' cross-motion for summary judgment.

**I.    Background**

On November 8, 2009, Hughes was a passenger in a vehicle owned and driven by Lilburn Mash ("Mr. Mash"). Hughes and Mr. Mash were in a motor vehicle accident, in which Hughes was injured. Mr. Mash had an insurance policy providing liability coverage with a bodily injury limit of $100,000 per person. Hughes damages for injuries and medical treatment exceeded the liability coverage on Mr. Mash's vehicle. Hughes had an insurance policy, issued by Owners, that provided for underinsured motorist coverage with a limit of $100,000 per person. Because her damages exceeded Mr. Mash's liability limits, Hughes made a claim for her Owners policy's underinsurance coverage limits of $100,000. Owners denied this claim, stating that Mr. Mash's automobile did not

satisfy the policy's definition of an "underinsured" vehicle because it had liability limits equal to the underinsured vehicle limits of Hughes' policy.

On May 3, 2011, Owners filed this declaratory judgment action, seeking a determination as to whether Hughes is entitled to underinsured motorist coverage under the terms of the Owners policy and whether Owners' denial of Hughes' claim was vexatious.[1]

## II.     Legal Standard

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law. Husinga v. Federal-Mogul Ignition Co., 519 F. Supp. 2d 929, 942 (S.D. Iowa 2007). "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits." Wermager v. Cormorant Twp Bd., 716 F.2d 1211, 1214 (8th Cir. 1983); see generally, 11 James Wm. Moore, et al., Moore's Federal Practice § 56.10[6] (3d ed. 2010).

---

[1] On May 20, 2011, while this action was pending, Hughes filed a petition in state court alleging breach of contract arising from Owners' failure to pay her claim. Owners removed that action to this Court, and it has been consolidated with this action. Hughes states counterclaims for vexatious refusal (Count I) and breach of contract (Count II).

**III.    Facts**[2]

On November 8, 2009, Hughes was a passenger in a vehicle owned and driven by Mr. Mash in Phelps County, Missouri.  Mr. Mash and Hughes were involved in a motor vehicle collision with Kelley Barnes, in which Hughes was injured.

At the time of the accident, there was in full force and effect a policy of insurance issued by Shelter Insurance Company to Mr. Mash, providing liability coverage for the 2000 Ford Taurus involved in the accident, under Policy No. 24-1-861699-1.  The Shelter policy contained liability insurance coverage with a bodily injury coverage limit of One Hundred Thousand Dollars ($100,000.00) per person and Three Hundred Thousand Dollars ($300,000.00) per occurrence.  The Shelter policy liability coverage limit was exhausted following settlement with Hughes in the amount of One Hundred Thousand Dollars ($100,000.00).

At the time of the accident, a policy of insurance was in full force and effect issued by Owners to defendant Hughes, covering a 2002 Lexus ES 300, with Policy No. 47-950-117-00.  The Owners policy declarations page issued to Hughes states Underinsured Motorist Coverage and Uninsured Motorist Coverage with limits of One Hundred Thousand Dollars ($100,000.00) per person and Three Hundred Thousand Dollars ($300,000.00) per occurrence with separate premiums charged for each.

The Owners policy contains an endorsement entitled "Missouri Underinsured Motorist Coverage Automobile Policy," which is Form 79339 (7-05) of the Owners policy.  The parties do

---

[2] These facts are taken directly from the parties' Joint Stipulation of Facts. [Doc. 28-1]

not dispute the actual policy language contained therein. The Owners policy contains the following definition:

1. **DEFINITIONS**

   **\*\*\***

   b. Underinsured automobile means an **automobile** to which a **bodily injury** liability bond or liability insured policy applies at the time of the **occurrence**:

   (1) with limits of liability at least equal to or greater than the limits required by the Motor Vehicle Financial Responsibility Law of Missouri; and

   (2) such limits of liability are less than those stated in the Declarations for Underinsured Motorist Coverage.

The Owners policy contains the following insuring agreement provision:

2. **COVERAGE**

   a. **We** will pay compensatory damages any person is legally entitled to recover from the owner or operator of an **underinsured automobile** for **bodily injury** sustained while **occupying** an **automobile** that is covered by **SECTION II - LIABILITY COVERAGE** of the policy.

   b. If the first named insured in the Declarations is an individual, this coverage is extended as follows:

      (1) **We** will pay compensatory damages **you** are legally entitled to recover from the owner or operator of any **underinsured automobile** for **bodily injury you** sustain:

         a. When **you** are not **occupying** an **automobile** that is covered by **SECTION II - LIABILITY COVERAGE** of the policy; or

         b. When **occupying** an **automobile** you do not own which is not covered by **SECTION II - LIABILITY COVERAGE** of the policy.

The Owners policy contains the following Limit of Liability provision for Underinsured Motorist Coverage:

4. **LIMIT OF LIABILITY**

a. Subject to the limits of liability stated in the Declarations for Underinsured Motorist Coverage, **our** limit of liability shall not exceed the lowest of:

   (1) The amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceed the total limits of all **bodily injury** liability bonds and liability insurance policies available to the owner or operator of the **underinsured automobile**; or

   (2) The amount by which compensatory damages for **bodily injury** exceed the total limits of such **bodily injury** liability bonds an[d] liability insurance policies.

b. The Limit of Liability is not increased because of the number of:

   (1) **automobiles** shown or premiums charged in the Declarations;

   (2) claims made or **suits** brought;

   (3) persons injured; or

   (4) **automobiles** involved in the **occurrence**.

c. If the Limits of Liability stated in the Declarations for Underinsured Motorist Coverage are less than two times the limits for **bodily injury** pursuant to the Missouri Vehicle Financial Responsibility Law, **our** payment for Underinsured Motorist Coverage shall not be reduced by any amounts paid or payable for the same **bodily injury**:

   (1) under **SECTION II - LIABILITY COVERAGE** of the policy;

   (2) under any workers compensation or similar law; or

   (3) by or on behalf of any person or organization who may be legally responsible for the **bodily injury**.

d. If the Limits of Liability stated in the Declarations for Underinsured Motorist Coverage are equal to or greater than two times the limits for **bodily injury** pursuant to the Missouri Vehicle Financial Responsibility Law, **our** payment for Underinsured Motorist Coverage shall be reduced by any amounts paid or payable for the same **bodily injury**:

   (1) under **SECTION II - LIABILITY COVERAGE** of the policy;

(2) under any workers compensation or similar law; or

(3) by or on behalf of any person or organization who may be legally responsible for the **bodily injury**.

The Owners policy contains the following Other Underinsured Motorist Coverage provision:

**5.     OTHER UNDERINSURED MOTORIST COVERAGE**

The Underinsured Motorist Coverage provided by this endorsement to persons **occupying your automobile** shall be primary, and with regard to persons **occupying** any other **automobile**, such coverage shall be excess over all other applicable underinsured motorists coverage. However, if there is other underinsured motorist coverage which applies on a primary basis to **your automobile**, **we** shall pay only **our** share of the damages. **Our** share shall be the ratio of **our** limit of liability to the total limits of all underinsured motorist coverage which applies. Total damages payable shall be considered not to exceed the limit of the applicable policy which has the highest limit of liability for underinsured motorist coverage.

The Owners policy contains the following Other Insurance Coverage provision:

**6.     OTHER INSURANCE**

Except as stated below, the Liability Coverage provided by this policy for **your automobile** shall be primary and with regard to any other **automobile** to which it applies, coverage shall be excess of any other **applicable** automobile liability insurance.

\* \* \*

Defendant Hughes has incurred damages for past injuries and medical treatment in excess of $200,000.00 as a result of the accident in question. Because Hughes' damages substantially exceed the tortfeasor's liability limits, on April 4, 2011, she made a claim for the Policy's underinsurance coverage limits of $100,000.00.

Owners' denial of Hughes' claim stated that:

A.     Tortfeasor's automobile did not qualify as an underinsured automobile under the Policy because it had liability limits equal to the Policy's underinsured limits on the Declarations page in violation of UIMC paragraph 1b(1-2) (paragraph 6B(1)) . . . ; and

B. Even if Tortfeasor's automobile had satisfied the Policy's definition of "underinsured," it was entitled to a "set-off" under UIMC paragraph 4a(1-2) (6B(3)) equal to all amounts recovered under the Tortfeasor's liability policy thereby reducing its liability for underinsurance coverage to $0.

## IV. Discussion

In its motion for summary judgment, Owners argues that it has no liability to Hughes for the injuries she incurred in the automobile collision because she has not satisfied the requirements for coverage pursuant to the underinsured motorist endorsement to the Owners policy. In support of its argument, Owners cites the Missouri Supreme Court opinion in Rodriguez v. General Accident Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. 1991), in which the Court upheld a similar definition of underinsured motorists, finding there is no coverage for a claim in which the insured has already recovered through the tortfeasor's liability policy with liability limits equal to the liability limit of the insured's policy. Furthermore, even assuming that Mr. Mash is an underinsured motorist, Owners states that under the terms of the underinsured motorist coverage provision, the applicable Limit of Liability clause limits Hughes' damages to zero dollars.

Hughes responds that the definition of "underinsured automobile" in the Owners policy cannot be read in isolation. She states that when the Owners policy as a whole is considered, it is "duplicitous, misleading or ambiguous," and should be construed in her favor. Specifically, she points to the "Other Insurance" clause and the set-off provision in the policy as being ambiguous, and cites cases in which courts have found the language to be ambiguous.

### (A) Owners Policy's Definition of Underinsured Vehicle

The Owners policy defines an Underinsured Vehicle as follows:

>  **Underinsured automobile** means an **automobile** to which a **bodily injury** liability bond or liability insurance policy applies at the time of the **occurrence**:
>
>  (1)   with limits of liability at least equal to or greater than the limits required by the Motor Vehicle Financial Responsibility Law of Missouri; and
>
>  (2)     such limits of liability are less than those stated in the Declarations for Underinsured Motorist Coverage.

Owners Policy (attached as Ex. 2 to Owners' Statement of Material Facts) at 020.

The Owners policy defines an underinsured motorist as one with liability limits *less* than the limits stated in the declarations sheet for the Owners underinsured motorist coverage endorsement (i.e., $100,000/$300,000). Owners states that this definition is set forth in clear, unambiguous language. Owners states Mr. Mash was not an underinsured motorist as expressly defined in Owners policy because he had liability coverage equal to Hughes' underinsured motorist coverage. For support, Owners cites the Missouri Supreme Court's opinion in Rodriguez v. General Accident Ins. Co. of Am., 808 S.W.2d 379, 382 (Mo. 1991).

In Rodriguez, the Court held that a vehicle with liability insurance policy limits that are equal to the limits of the insured's liability coverage was not an underinsured vehicle triggering coverage under the insured's underinsured motorist coverage. Id. at 382. In Rodriguez, the Rodriguezes received the full $50,000 policy limits from the other driver's insurance policy and claimed they were entitled to additional damages under their own policy with equal limits pursuant to the underinsured motorist provision. The Rodriguezes argued that the policy was at least ambiguous and should be construed in favor of coverage. Id. The Court concluded, however, that the provision was not ambiguous, as it clearly defined an underinsured motor vehicle as one with liability limits that are "less than the limit of liability for this coverage." Id. As the limits of the tortfeasor's policy

were equal to, not less than, the policy limits of the Rodriguezes' policy, the tortfeasor was not an underinsured motorist. As such, the Court concluded coverage was not triggered under the policy.

Notably, in the Rodriguez decision, the Missouri Supreme Court rejected the Eighth Circuit's opinion in Weber v. American Family Mut. Ins. Co., 868 F.2d 286 (8th Cir. 1989) as "inconsistent with Missouri law." Rodriguez, 808 S.W.2d at 383. In Weber, the plaintiff argued, as Hughes does here, that the underinsured vehicle coverage is meaningless because an insured would never reach the limits of liability under any scenario because of the applicable set-offs. See Pl. Reply at 1 ("[A] reasonable insured reviewing its policy would, in light of the very nature of underinsured coverage and based on the declarations page setting out the limits of $100,000/$300,000 . . . conclude that under some factual scenario the full $100,000/$300,000 limits would be paid"). The Eighth Circuit rejected the plain language of the insurance contract before it in Weber, and held that the underinsurance coverage was excess above payments from other sources. Rodriguez, 808 S.W.2d at 382-83 & n.1. The Missouri Supreme Court stated that Weber was an example of a court creating ambiguity to distort the language of an unambiguous policy. That is precisely what plaintiff seeks to do here, and precisely what the Court cannot do.

Plaintiff also argues that Rodriguez should not be followed because the Missouri Supreme Court has since "relegated the underinsured motorist language in Rodriguez to mere dicta." Pl. Reply at 2. Plaintiff's argument is misleading. The Missouri Supreme Court has left untouched its holding in Rodriguez that there is no underinsurance coverage in a case in which the policy definition of underinsured vehicle is a vehicle whose limits for bodily injury liability are "less than the limit of liability for this coverage." Rodriguez, 808 S.W.2d at 382.

In Long v. Shelter Ins. Cos., 351 S.W.3d 692 (Mo. 2011), for example, the Court distinguished the controlling "underinsured motor vehicle" language in the Rodriguez policy from that in the Long policy, stating that in Rodriguez the definition of "underinsured motor vehicle" was specifically tailored to a vehicle whose coverage for bodily injury liability was less than the policy limits for the insured's separate policy. Long, 351 S.W.3d at 698 n.7. By contrast, the policy at issue in Long defined an underinsured vehicle as one with liability limits less than the total amount of damages suffered by the insured. The Missouri Supreme Court made the same distinction in Jones v. Mid-Century Ins. Co., 287 S.W.3d 687 (Mo. 2009), stating there "was no underinsurance in [Rodriguez]," because the tortfeasor in that case was not an underinsured motorist as defined by the insured's policy. Jones, 287 S.W.3d at 692 n.3; Rodriguez, 808 S.W.2d at 382.[3]

Here, unlike Long and Jones, Hughes' policy language defines an underinsured vehicle as one with liability limits less than the insured's underinsurance limits, similar to plaintiffs' policy in Rodriguez. Hughes received $100,000 pursuant to Mr. Mash's liability policy with Shelter Insurance. She seeks to recover an additional $100,000 under the underinsured motorist provision of her policy issued by Owners. However, the policy limits of Mr. Mash's Shelter policy and Hughes' Owners policy are equal. According to the express terms of the Owners policy, and current Missouri law, Mr. Mash was not an underinsured motorist. Hughes' claim has not triggered coverage under the Owners policy.

---

[3]In her reply brief, plaintiff states "it should be noted that Ragsdale, Long, Wasson, and Chamness all defined underinsured vehicles as one with limits less than the underinsured limits of the policies." Pl. Reply at 4. This statement incorrect with respect to the Long and Wasson cases. See Long, 351 S.W.3d at 698 (defining underinsured vehicle as one with a liability policy with limits less than the amount of the insured's damages); Wasson, 358 S.W.3d at 122 (same).

**(B)     The "Other Insurance" Clause and Set-Off Provision**

In light of the controlling precedent of Rodriguez, Hughes argues that the definition of underinsured vehicle cannot be read in isolation. Well-settled Missouri law requires a court to evaluate the policy as a whole, and not to interpret policy provisions in isolation. See Seeck v. Geico General Ins. Co., 212 S.W.3d 129, 133 (Mo. 2007) (rejecting insurer's argument that the court should hold the tortfeasor's vehicle does not come within the definition of "underinsured motor vehicle" and the court should not reach issue of whether policy as a whole was ambiguous). Hughes states that the "Other Insurance" clause in the Owners policy and the set-off provision render the policy duplicitous, misleading or ambiguous. The cases cited in support of Hughes' argument, however, deal with policy language substantially different from that in the Owners policy. Because of the key differences in the policy language of the cited cases, these cases do not alter the Court's finding that the plain language of the Owners policy unambiguously provides that Hughes is not entitled to recover under the underinsured motorist coverage endorsement.

*(1)     "Other Insurance" Clause*

Hughes' reliance on American Family Mut. Ins. Co. v. Ragsdale, 213 S.W.3d 51 (Mo. Ct. App. 2006), involving the interpretation of an "Other Insurance" clause, does not alter the Court's conclusion that the Owners policy is clear and unambiguous. The policy in Ragsdale stated that the underinsured motorist coverage was "in excess over any *other similar insurance*." Id. at 56 (emphasis added). The Missouri court found the clause "other similar insurance" ambiguous because it could mean the underinsured coverage is excess over any other applicable coverage (i.e., the tortfeasor's liability coverage) or it could mean the underinsured coverage is excess over any other underinsured motorist coverage. If the insured read the "other similar insurance" language to

mean the underinsured coverage is in excess over the tortfeasor's liability coverage, the reasonable insured would consider the underinsurance coverage to be excess coverage. Because of the ambiguity, the Ragsdale court found in favor of the insured and allowed the stacking of policies.

The Ragsdale court expressly distinguished that case from ones in which a policy's "Other Insurance" clause stated the policy was "in excess over any other *collectible underinsured motorists insurance*." Ragsdale, 213 S.W.3d at 56 (quoting Travelers Indemnity Co. of Am. v. David C. Gibson, Inc., 11 F. Supp. 2d 1096, 1098-99 (E.D. Mo. 1998) (emphasis in original)). This policy language, "other collectible underinsured motorists insurance," the Ragsdale court distinguished as unambiguous.

Here, Owners' "Other Underinsured Motorist Coverage" clause states as follows:

> The Underinsured Motorist Coverage provided by this endorsement to persons occupying your automobile shall be primary, and with regard to persons occupying any other automobile, such coverage shall be excess over all other *applicable underinsured motorists coverage*. . . .

Owners Policy (attached as Ex. 2 to Owners' Statement of Material Facts) at 023, ¶ 5 (emphasis added).

This is similar policy language to that which the Ragsdale court found unambiguous. Ragsdale, 213 S.W.3d at 56 (citing Travelers, 11 F. Supp. 2d at 1098; Green v. Federated Mut. Ins. Co., 13 S.W.3d 647 (Mo. Ct. App. 1999); Lang v. Nationwide Mut. Fire Ins. Co., 970 S.W.2d 828 (Mo. Ct. App. 1998)).[4] Like these cases, the "Other Insurance" provision here is not ambiguous,

---

[4] Although Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132 (Mo. 2009), cited by Hughes, contains similar policy language under the "Other Insurance" clause, it is factually distinguishable from Hughes' case. In Ritchie, the Missouri Supreme Court found the "Other Insurance" clause ambiguous as to stacking and allowed the Ritchies to stack the underinsured motorist coverage contained in their three separate insurance policies. Unlike Ritchie, the question here does not involve whether Hughes' underinsured motorist coverage is collectible over other applicable underinsured motorist coverage, but whether Hughes'

and, according to the plain language of the policy, the underinsured motorist coverage does not provide excess insurance to a liability policy. The provision unambiguously states that it provides excess coverage only for other underinsured motorist coverage.

*(2) Set-Off Provision*

Finally, Hughes argues that the "set-off" provision (titled in the policy as a "Limit of Liability" provision for the Underinsured Motorist coverage) in the Owners policy renders it ambiguous. This provision states:

> 4. LIMIT OF LIABILITY
>
> a. Subject to the limits of liability stated in the Declarations for Underinsured Motorist Coverage, **our** limit of liability shall not exceed the lowest of:
>
> (1) The amount by which the Underinsured Motorist Coverage limits stated in the Declarations exceed the total limits of all **bodily injury** liability bonds and liability insurance policies available to the owner or operator of the **underinsured automobile**; or
>
> (2) The amount by which compensatory damages for **bodily injury** exceed the total limits of such **bodily injury** liability bonds and liability insurance policies.

Owners Policy (attached as Ex. 2 to Owners' Statement of Material Facts) at 022, ¶ 4.

Hughes argues, "the reasonable insured may not know what to make of this sentence in the context of prior promises to the limits, other than to read it as reinforcing that the underinsured coverage is in **excess** to the liability limits." (Hughes Opp'n at 10) (emphasis in original). The cases cited by Hughes in support of her position, however, involve policy language that differs substantially from the language in the Owners policy.

---

underinsured motorist coverage is collectible over Mr. Mash's liability coverage.

In the Long and Wasson cases cited by plaintiff, the policies define "underinsured motor vehicle" as one that was covered by a liability policy with limits less than the "full amount owed by the owner . . . of that motor vehicle for the insured's damages." In both cases, the set-off provisions used the language "we will pay the *uncompensated damages*, subject to the limit of our liability stated in this coverage." Long, 351 S.W.3d at 702 (emphasis added); Wasson v. Shelter Mut. Ins. Co., 358 S.W.3d 113 (Mo. Ct. App. 2011) (emphasis added).  Because of this language, the court found that the ordinary insured would read the endorsement to mean that the underinsured motorist provision will pay in excess over what the insured received from others.  "[I]t would appear perfectly clear that the purpose of UIM coverage is to provide excess insurance over the insurance provided by a negligent tortfeasor."  Wasson, 358 S.W.3d at 122.  The courts found the set-off provision, which attempted to limit that coverage, was ambiguous.

For example, in Wasson, the underinsured motor vehicle endorsement stated that if an insured was involved in an accident with an underinsured vehicle, and the owner of the underinsured vehicle was legally obligated to pay some or all of the insured's damages, "we will pay the uncompensated damages, subject to the limit of our liability stated in this coverage." Wasson, 358 S.W.3d at 122.  The policy defined "uncompensated damages" as "the portion of the damages that exceeds the total amount paid or payable to an insured by . . . all persons legally obligated to pay those damages."  Id.  In that case, Ms. Wasson suffered more than $600,000 in damages, and the tortfeasor's insurer paid its liability limits of $100,000. Ms. Wasson had underinsured motor vehicle coverage of $250,000.  The Court found that based on the policy language, Ms. Wasson's "uncompensated damages" were $500,000 ($600,000 minus $100,000), and the insurer had to pay the full policy limit of $250,000 in underinsured motor vehicle coverage.  Put another way, the

amount paid by the tortfeasor was subtracted from the total damages, leaving Ms. Wasson's insurer to pay the "uncompensated damages" up to the policy limits. The Missouri Court of Appeals found the set-off provision of Ms. Wasson's policy was ambiguous, because "the definition of 'uncompensated damages' has *already* taken into account the payment made on behalf of the tortfeasor." Id. at 124 (emphasis in original). Therefore Ms. Wasson did not have to subtract the tortfeasor's liability payment of $100,000 as a set-off from her policy limit of $250,000, as her insurer had argued.

Here, unlike Long and Wasson, the Owners policy does not define the underinsured vehicle as one with a liability policy that is less than the "full amount owed . . . for the insured's damages." Rather, it is defined as one with a liability policy with limits less than those stated in the Owners policy underinsured limits (i.e., $100,000/$300,000).[5] As discussed above, the reasonable insured would understand that the underinsured endorsement is not triggered if the liability policy of the tortfeasor has limits equal to the underinsured limits of the Owners policy. Moreover, even if the underinsured endorsement were triggered, the Owners policy unambiguously states that an insured's recovery under the underinsured motorist coverage is limited to the amount by which its limits exceed the amount available under the tortfeasor's liability coverage. In Hughes case, that amount is zero dollars. Unlike Long and Wasson, the Owners policy does not agree to pay "uncompensated damages," up to its policy limits, and therefore the Owners policy set-off provision is not ambiguous under these cases. Thus, even if the underinsured endorsement were triggered, the set-off provision would apply and limit Hughes damages to zero dollars.

---

[5]The Missouri Court of Appeals specifically distinguished Long from Rodriguez based on this different definition for "underinsured motor vehicle." Long, 351 S.W.3d 692, 698 n.7.

## V.     Conclusion

Ms. Hughes' claim has not triggered coverage under the Owners policy.  Mr. Mash simply was not an underinsured motorist within the language of the unambiguous policy and controlling Missouri law.  The underinsured motorist provision does not apply to Ms. Hughes' claim, and Owners is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that defendant/consolidated plaintiff/ counterclaim plaintiff Betty Lu Hughes' first motion for leave to file her amended (corrected) reply in support of motion for summary judgment is **GRANTED**. [Doc. 47]

**IT IS FURTHER ORDERED** that plaintiff/consolidated defendant/counterclaim defendant Owners Insurance Company's motion for summary judgment is **GRANTED**. [Doc. 26]

**IT IS FURTHER ORDERED** that defendant/consolidated plaintiff/counterclaim plaintiff Betty Lu Hughes' motion for summary judgment is **DENIED**. [Doc. 39]

An appropriate judgment will accompany this memorandum and order.

                                                **CHARLES A. SHAW**
                                                **UNITED STATES DISTRICT JUDGE**

Dated this   17th   day of April, 2012.